Ms. Burke for the appellant, Mr. Koppel for the appellee. Good morning, Your Honors. Lauren Burke for Appellant Judicial Watch. Can everybody hear me okay? Yes. Yes.   I'm going to let you know that I'm going to touch on about three points today. The first is that the documents and records that issue here, which are SD302s, are not the work product of an attorney as a threshold matter. They are the work product of FBI agents. As the government withholds those records as requested under FOIA, it is on the government to show with very detailed specificity why or how these federal records fall under the asserted exemption. The burden is on the government. Lastly, I just want to touch a little bit on fear that the application of attorney work product here elevates this work product exception above the transparency that is broadly mandated under FOIA. The application of such work product would swallow the FOIA requirement placing a burden on the agency to affirmatively state specific reasons and showing why or how a record, which here are obligatory procedurally required summaries of witness interviews, how they would fall within the intended protection of attorney work product and should be exempt from disclosure. Taking a step back, the issue here is that that issue are three SD302 summary reports of FBI agents, and the request is made by appellant to dishwasher to the FBI and withhold in full all three records asserting a attorney work product exemption. The government has not met its burden here. What the government did do was provide a declaration of Ms. Bonamici, which dances around the nature of the 302s as the work product of an attorney and broadly describes attorney collaboration with the FBI during the investigation. However, the district court gave too much credit to the Bonamici Declaration. What was not done, my apologies, what the Bonamici Declaration does not provide here, which was provided in similar cases such as Durham, is offer affirmative statements that the records at issue either reflect factual or legal theories or impressions of an attorney themselves. Very telling that Ms. Bonamici, who is a veteran prosecutor, does not say these clearly easily determinable statements, but rather talks in circles a little bit about collaborating with FBI agents and working together on the interviews themselves. However, the 302s were not created for the purpose, my apologies, however the 302s at issue were created as a procedural requirement of the interviewing FBI agents. Can I ask you this question, Ms. Brooks? The declaration does say, at paragraph 8 on JA-32, that prosecutors participated in selecting these witnesses for interviews, discussing and determining in advance the investigative strategy for each interview and questioning the witnesses. So suppose that the interviews went as they did and the prosecutors were involved. In some questioning, you're right, we don't know exactly to what extent and which questions were asked, but the prosecutors were involved in mapping out the strategy and were involved in the interviews themselves, including in terms of asking some questions. And then the prosecutors ask the FBI agents, they're not asking for the 302s, let's just assume there's not even a 302 out there, that that's just not part of what the FBI does. But the prosecutors say, can you give me your notes from the interviews, what was asked and what was answered? And if the FBI does that, are those notes the work product? The notes that were from the FBI agents? Yes, suppose the prosecutors just say, you know, as happened here, we're going to participate in mapping out the strategy for the interviews. You ask questions, but we're going to ask questions too. And then at the close of it, the prosecutors, and there's an advanced understanding to the effect that the FBI questioners are going to keep notes about the interviews. And then afterwards, the prosecutors say, we talked about your keeping notes, I assume you kept the notes, can you type up those notes and send them over to me? Sure, I understand. Is what the FBI types up and sends over to the attorneys, is that protected work product? I thank you and appreciate actually that factual circumstances. My initial answer to you is, I suppose it depends. Given the factual circumstances here, if those notes were being requested under FOIA and the request was made to the FBI, as here, Judicial Watch requested specifically from the FBI 302s, or as in your scenario, requested specifically from the FBI notes taken from the witness interview. The FBI, as in here, called their own system of records, located the three 302s that are at issue, and therefore in their own system of records, did not need to, as far as we know, did not need to go to the U.S. Attorney's Office and seek any notes they may have. These were specifically within the FBI system. I think under your scenario, those FBI handwritten notes or typed up notes that would remain in the FBI system would be disclosable to the requester under FOIA. Given a little bit of a tweak on those circumstances, if it was a civil litigation, if it was a civil matter and it was an opposing party that was seeking from the AUSA or any of that, certain notes or anything, there may be more of an argument from the AUSA that the FBI's notes were used for their specific trial preparation and all that sort of stuff, and were part and parcel of the AUSA's investigatory file or litigation file or any such, however they want to deem, where they placed their litigation preparation. But says that not in this book whether they're ultimately used by the government in litigation. Isn't it more whether they would reflect the litigation plan and approach of the attorneys? I mean, if someone kept a, you know, time record, let's say, for, you know, and that the purpose of them is in the end to recover, you know, or to show their supervisor that they're doing their work, but it reveals the litigation plan and approach of the lawyers and it's done under their direction. Isn't that covered by Hickman and by our reported cases? Well, I argue that it does not because as far as what is revealed, it really is a takeaway on litigation strategy or any such thing. So the notes of the attorneys that were present at the interview themselves, whether they asked questions or whether they were simply observing, they could be observing as oversight to the questioning agents or more likely present so that they can take their own notes, their own memoranda, their own reflection for use in trial preparation. The fact that as Mr. Sharkey, who is a veteran FBI agent, both AUSAs involved prosecutors as well as FBI agents are aware that FD302s will be used, whether they're used by other FBI agents in other investigations or by the court in the pending or relevant criminal litigation. They are also very aware that they are subject to disclosure to the public under FOIA. Ms. Burke, what is missing in the declaration from your perspective? What would have to be there to make these work products? The declaration itself in order to make it work products would be Ms. Bonamici. I'm not sure if she participated in the interviews themselves or more specifically the actually present attorneys that participated in the interviews stated, we were present, I spoke with. Well, why would they have to be present? Suppose the questions were crafted by the FBI agents during a conversation with the lawyers who told the FBI agents what they were looking for. Isn't that work product? I would argue it potentially could be work product, but it is required by... How could it not be? It reveals the thinking of the lawyers about what evidence they need in their case. But that is not what is said here in the declaration, and that's required under FOIA. That's why I asked you the question, what's missing? Those statements such as this 302, the FBI agents notes or I've reviewed these, these reflect my litigation strategy, this reflects what we discussed, the questions follow specifically along the line of where we intended this investigation to go. Was that my direction? The declaration does say, paragraph 8, that the prosecutors participated in selecting the witnesses, discussing and determining in advance the investigative strategy for each interview and questioning the witness, the AUSAs were present at each interview and the interviews were conducted for the purpose of gathering evidence. It seems like that is inevitably going to reflect the counsel's strategy, their records of what the AUSAs thought were important in preparing for the trial. And all of the assigned AUSAs reviewed them, presumably because they wanted to make sure that it did accurately reflect the plan that the lawyers had put in place. Well, I think you just hit the nail on the head is that you are using the term presumably. In some of the cases that the defendant relies upon, in New York Times and in Martin, the declarations and the support to show that the records at issue are in fact attorney work products are clear in saying these are the records that are being turned over, even the case that involves 302. This is specifically what it reflects. I reviewed, I personally reviewed the 302, I made certain changes, I specifically made edits so that the 302 would reflect specifically what I was looking towards. That's what is easy enough for the government to do here. They could have provided a declaration from the FBI agents themselves that says, pursuant to FBI policy, I put together an SD302, given the basis of this case and the involvement of the AUSAs here, the 302 reflects all this. You're arguing that there's a requirement of in-camera review. I said presumably because we haven't seen them and I gather the district court here didn't look. But you don't argue that in-camera review is always required. In fact, you argue it only in the alternative. So I think if we know enough about the role of the agents, about the reason for the interviews, about the, as attested here, the involvement of AUSAs in every one of these interviews, how could that not be enough? And I apologize. I didn't mean to give the impression that I'm requiring in-camera review. That's certainly not what I'm requiring. But it does touch on what I am requiring is that the government meets its burden under FOIA, and that is to provide details and specify precisely what makes this record fall within the exemption. And I don't think there is enough here. What is missing in the paragraph that Judge Pillard read to you? What's missing from that? Missing would be that these 302s, having reviewed the 302s, they... But the paragraph said that they were involved in crafting the types of questions to be asked. What more do they need to say? That that is what the 302, which is specifically a requirement of the FBI interviewing agent, the participating attorneys have their own, they can provide their own legal memorandums  Having reviewed the 302s of the FBI agent, and given the veteran nature of the AUSAs involved here, knowing, therefore, what the 302s would be used for, and that they would be subject to public disclosure, they would include information such as, I do not intend this to be publicly disseminated. And these adequately reflect the full nature of where I directed the investigation to go, because as Mr. Sharkey pointed out, the agents do this, they file these reports, they complete the reports, and they file and they go into their FBI files. This is required, it's policy, it's procedure. They are aware of what it's used for. They are careful not to indicate or reflect the participating attorneys' legal theories, opinions, that sort of stuff. As I said, Mr. Sharkey has several paragraphs describing that the government attorneys too often collaborate or discuss the investigation with the agents. The 302s do not include attorney notes or mental impressions. They recognize they are subject to discovery rules and will likely be requested by defendants in court as well as under FOIA. And they... Ms. Burke, unless my colleagues have further questions at this point, we will give you a rebuttal. But maybe we'll hear from the government unless my colleagues have further questions at this point, and then we'll hear from you after we hear from the government. Thank you very much. I appreciate it. Are there any further questions? Okay, why don't we hear from Mr. Koppel. Thank you, Your Honor. At the outset, I'd really like to emphasize the narrow scope of the government's argument and the district court's holding here, which is wholly supported by both the Bonamici Declaration and the case law with respect to the attorney or product doctrine. First of all, the Bonamici Declaration spells out wholly adequately, as the court's queries indicated, what happened here and why this is covered by the word product doctrine. It's very detailed and referring to those paragraphs, particularly seven and eight, which the court has quoted. It talks about the prosecutor steering the investigative efforts, that the interviews were conducted at the direction of the prosecutors. They participated in selecting the witnesses, discussing and determining, advancing the strategy and questioning the witnesses, and then they reviewed the 302s afterwards. That is wholly satisfactory to establish work product under the relevant case law, particularly this court's Martin decision, where the documents were affidavits from witnesses that were created and compiled at the request of an attorney, and they certainly were not actually done by the attorney. I would just highlight also the breadth of the plaintiff's position, which is really essentially that because 302s are normally created pursuant to an FBI policy, that means that they are by definition not the attorney work product, and that is simply incorrect, and it's a formalistic approach that has no support in the case law. As a matter of fact, we've cited in our brief another judicial watch case in which this court held that the work product doctrine is to be broadly interpreted and applied, and also that once a document falls within the privilege, there's no segregability inquiry, and this court has also held that the work product doctrine encompasses both deliberative process matters, attorney impressions, legal theories, et cetera, and also factual material. So again, the district court's decision here is clearly correct and should be affirmed, and unless there are further questions, I would rely on our briefs, the Bonamici Declaration, the district court's decision, and this court's case law, and I'm happy to answer any questions. If my colleagues don't have any questions, I think we understand your argument. I don't. Any questions? No. Thank you, Mr. Koppel. Why don't we hear from Ms. Burke for her rebuttal? Thank you, Your Honors, and I'll just be brief. As my colleagues said, things have been briefed, and this has gone through the rig of morale. I just hesitate to... The fear here is that there would be a dangerous precedent set and that the burden on the government would be lowered to the extent that any future government declarants would need to only say they were involved in or present at, and I do believe that FOIA requires more, rightfully so, given that all the information is in the government's hands, and in order for the court and for the plaintiffs, the other party, to properly analyze whether or not the withheld records are validly exempt, there does need to be more, and I just fear that we would be setting a very low bar for future cases. And on that, if you have any questions, I'm happy to answer. Nope. Okay. It sounds like we don't. Thank you, Ms. Burke. Thank you, Mr. Koppel. We'll take the case under submission. Thank you. Thank you, Your Honor. This honorable court is now adjourned until Thursday, April 2nd at 9.30 a.m.
judges: Srinivasan, Tatel, Pillard